# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| SHAWNA EARLEY, § | |
| § | |
| Plaintiff § | |
| v. § | CIVIL ACTION NO. 5:21-CV-00103-RWS-JBB |
| § | |
| KILOLO KIJAKAZI, ACTING COMM'R § | |
| OF SOC. SEC., § | |
| § | |
| Defendant. § | |

## ORDER

Before the Court is Plaintiff Shawna Earley's Objection to the Magistrate Judge's Report and Recommendation. Docket No. 15. The Magistrate Judge's Report and Recommendation contains proposed findings of fact and recommends the Social Security Commissioner's decision be affirmed. Docket No. 14 at 24–25. The Court herein considers Plaintiff's objection and conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

### I.      Social Security Decision and Appeal

Plaintiff applied for disability insurance benefits and supplemental security income on November 27, 2018, alleging she became disabled on November 12, 2012. Docket. No. 5 [hereinafter Tr.] at 135. Plaintiff's applications were denied initially and on reconsideration. Tr. at 141–48, 152–57. Pursuant to Plaintiff's request, an Administrative Law Judge ("ALJ") held a *de novo* administrative hearing on November 24, 2020. *Id.* at 29–65. During the hearing, Plaintiff amended her onset date of disability to April 29, 2017. *Id.* at 32. On December 29, 2020, the ALJ found Plaintiff was not disabled under the asserted sections of the Social Security Act. *Id.* at 23. The Appeals Council denied Plaintiff's request for review on June 22, 2021, making the ALJ's

decision the final decision of the Commissioner for judicial review under 42 U.S.C. § 405(g). *Id.* at 1–4. Plaintiff filed the above-captioned case, requesting this Court reverse the Commissioner's decision and award benefits to Plaintiff or remand the case for another hearing. Docket No. 1 at 3.

## II.  Report and Recommendation

The above-captioned case was referred to United States Magistrate Judge J. Boone Baxter pursuant to 28 U.S.C. § 636. On February 23, 2023, the Magistrate Judge issued a Report recommending the Commissioner's decision be affirmed. Docket No. 14, Report and Recommendation [hereinafter R&R]. In the R&R, the Magistrate Judge set forth in detail the medical evidence of record. The record reflects Ravi Kumar Sreerama, M.D., remained Plaintiff's primary treating physician at Paris Healthcare Group from May 2015 through at least November 2020. R&R at 2–4. As of September 27, 2016, Dr. Sreerama reported that Plaintiff's medical problems included hypothyroidism, hyperlipidemia, depressive disorder, carpal tunnel syndrome, neuropathy, essential hypertension, gastroesophageal reflux disease, menopausal syndrome, polyarthropathy, cervical radiculopathy, fibromyositis, neuralgia, foot pain, epistaxis, increased urinary frequency, hyperglycemia, and low back strain. Tr. at 425. Plaintiff's further treatment reports with Dr. Sreerama reflect that Plaintiff often reported widespread joint and/or muscle pain. Tr. at 384, 387, 409, 416, 424, 427, 1076, 1082, 1087, 1088.

For example, on March 12, 2018, Plaintiff reported muscle aches, arthralgias/joint pain, back pain, and urinary loss of control. Tr. at 385–88. On examination, Dr. Sreerama noted Plaintiff had tenderness and limited range of motion of the lumbar spine, as well as 1+ edema of the extremities. *Id.* at 387–88. On October 29, 2018, Plaintiff again reported muscle aches, arthralgias/joint pain, and back pain. *Id.* at 381–84. On examination, Plaintiff had musculoskeletal tenderness and multiple trigger points, but her gait and station were normal. *Id.* at 384. Dr.

Sreerama prescribed medication for the treatment of fibromyalgia *Id.*

During the relevant time period, Plaintiff also received treatment for fibromyalgia, among other issues, through the Paris Healthcare Group Rheumatology Clinic with Thamilvani Thiruvasahar, M.D. Tr. at 598–619. Plaintiff reported to Dr. Thiruvasahar on November 7, 2017, complaining of joint pain, muscle pain, night sweats, shortness of breath, back pain, swelling in her joints, and fatigue Tr. at 615–19. Dr. Thiruvasahar noted that Plaintiff's erythrocyte sedimentation rate ("ESR")[1] was elevated *Id.* at 616.

On follow-up with Dr. Thiruvasahar on November 21, 2017, Plaintiff reported she was hurting all over, nothing had improved and also complained of vision change and heat intolerance Tr. at 610–15. On examination, Plaintiff demonstrated musculoskeletal tenderness, tender trigger points, tenderness of her feet on squeeze of the metatarsophalangeal (MTP) and tenderness of her hands, wrists and ankles. *Id.* at 614. Dr. Thiruvasahar assessed primary fibromyalgia syndrome, myalgia, and dysthymic disorder. *Id.* at 614–15. Dr. Thiruvasahar referred Plaintiff for physical, occupational and aquatic therapy *Id.* at 614. Dr. Thiruvasahar again noted that Plaintiff's ESR was raised *Id.* at 615.

When Plaintiff returned to Dr. Thiruvasahar on November 27, 2018, she reported night sweats, dry eyes, mouth ulcer, wheezing and shortness of breath, abdominal pain, muscle aches and weakness, arthralgias/joint pain, back pain, swelling in her extremities and joints, AM stiffness, weakness and numbness, depression, sleep disturbance, anxiety, restless sleep, fatigue, and easy bruising. Tr. at 604–10. Examination remained nearly unchanged with the addition of shoulder tenderness to palpation. *Id.* at 609–10. Dr. Thiruvasahar noted that Plaintiff was on

---

[1] According to Plaintiff's objections, ESR is a blood test that can reveal inflammatory activity in the body. Docket No. 15 at 8.

Page **3** of **17**

multiple medications by her pain management doctor and again referred Plaintiff for aquatic therapy to treat fibromyalgia. *Id.*

During a follow-up visit at Paris Healthcare Group on March 19, 2019, Plaintiff reported to Kerri Huddleston, RN, FNP-BC, right shoulder pain for one week, myalgia, and arthralgias/joint pain. Tr. at 936–39. On examination, nurse practitioner Huddleston noted that Plaintiff had tenderness and limited range of motion of her right shoulder. *Id.* at 940. Plaintiff was given a Kenalog injection to treat a suspected strain/arthritis *Id.*

Plaintiff reported on follow-up with nurse practitioner Huddleston on May 2, 2019, complaining of continuing right shoulder pain as well as increasing pain in her wrists and hands. Tr. at 929–31. A right shoulder x-ray on May 3, 2019, showed degenerative changes of the acromioclavicular joint. *Id.* at 946–47. A magnetic resonance imaging scan (MRI) of Plaintiff's right shoulder on October 14, 2019, showed moderate acromioclavicular joint osteoarthritis, supraspinatus and infraspinatus tendinopathy with articular and bursal surface fraying, and mild tenosynovitis of the extra-articular biceps tendon. *Id.* at 1096.

Meanwhile, on April 22, 2019, Dr. Sreerama completed an "Application for Persons with Disabilities Parking Placard and/or License Plate" for Plaintiff for permanent disability. Tr. at 925–26. On further follow-up visits with Dr. Sreerama in August, September, and November 2020, Plaintiff continued to report arthralgias/joint pain, including pain in her back, hands and feet. *Id.* at 1076, 1082, 1087, 1088. Dr. Sreerama's diagnoses included polyarthropathy with elevated ESR *E.g.*, *id.* at 1077, 1088.

In a medical source statement dated November 17, 2020, Dr. Sreerama reported that Plaintiff could not consistently perform work requiring her to be on her feet longer than two hours during an eight-hour workday; could not lift ten pounds frequently and twenty pounds

occasionally; would need additional breaks during an eight-hour workday totaling one hour; could occasionally reach, handle, and finger; could frequently feel; would miss work more than ten days per month on average; and would be off task more than 25% of an eight-hour workday. Tr. at 1061–65.

From October 2018 through February 2020, Plaintiff received pain management treatment with Ifteqar Syed, M.D. Tr. at 808–13, 1020–50. Plaintiff reported widespread pain of an average intensity of 6/10 to 8/10. *Id.* Dr. Syed's diagnoses included fibromyalgia, neuropathy, insomnia, chronic depression, and osteoarthritis of the right acromioclavicular joint *Id.* at 809, 812, 1022, 1024–25, 1028, 1031, 1034, 1037, 1040, 1042–43, 1046, 1050. Dr. Syed's prescribed medications included Percocet, Diclofenac, Voltaren gel, Gabapentin, Talwin, Dilaudid, Flector patch, Methadone, Robaxin, Nabumetone, Skelaxin, Belsomra, and Cymbalta. *Id.* at 810, 813, 1022, 1025, 1028, 1031, 1034, 1037, 1043, 1046, 1050.

The Magistrate Judge also discussed the March 27, 2019, consultative psychological examination by David R. Grant, Ph.D. R&R at 7. Dr. Grant noted Plaintiff had a depressed mood and flat affect. Tr. at 920–22. Plaintiff was unable to complete serial sevens but could complete serial threes. *Id.* at 921. Plaintiff could not recall any of three items after five minutes with interference. *Id.* Dr. Grant diagnosed major depressive disorder, recurrent, moderate; generalized anxiety disorder; and panic disorder. *Id.* at 922. Dr. Grant opined Plaintiff was able to understand, follow, and carry out instructions, but it was unlikely she would respond appropriately to work pressure in a work setting; and, her ability to tolerate stress associated with competitive work and make reasonable occupational adjustments was poor. *Id.* at 923.

The Magistrate Judge also noted State Agency medical consultants, Cynthia Linardos, M.D., and Kavitha Reddy, M.D., opined that Plaintiff is limited to work at the light level, with

occasional postural limitations as well as limited pushing, pulling, handling, and fingering. R&R at 8. State Agency psychological consultants, Joel Forgus, Ph.D., and Matthew Turner, Ph.D., opined that Plaintiff can understand, remember, and carry out simple instructions, make simple decisions, concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting Tr. at 66–135.

After setting forth Plaintiff's hearing testimony, as well as the hearing testimony of the vocational expert (R&R at 8–11), the Magistrate Judge set out the ALJ's application of the five-step sequential evaluation process. R&R at 13–14. Turning to the analysis, the Magistrate Judge notes Plaintiff identifies the following specific issues on appeal: (1) whether the ALJ properly considered Plaintiff's fibromyalgia; and (2) whether substantial evidence and relevant legal standards support the ALJ's residual functional capacity assessment and specifically the ALJ's reasoning for finding Dr. Sreerama's and Dr. Grant's opinions "unpersuasive." *Id*. at 15–16 (citing Docket No. 11 at 1).

The Magistrate Judge did not find, as argued by Plaintiff in her first claim of error, that the ALJ erred in evaluating the functional effect of Plaintiff's fibromyalgia. R&R at 17. Consistent with Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869, the ALJ applied the sequential five-step test for disability in light of Plaintiff's fibromyalgia and other severe impairments. R&R at 17–18; *see* Tr. at 12–23; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In assessing Plaintiff's residual functional capacity, the ALJ accounted for Plaintiff's fibromyalgia symptoms and also included accommodations for her fibromyalgia. Tr. at 18–20. Specifically, among other things, the ALJ stated as follows:

> To account for the claimant's obesity, degenerative disc disease, neuropathy, degenerative joint disease of the right shoulder, fibromyalgia, bilateral carpal tunnel syndrome, and chronic pain syndrome, she is limited to work at the light exertional

>level and can frequently operate foot controls with the bilateral feet and frequently operate hand controls with the bilateral hands.

*Id.* at 20.

Additionally, the ALJ considered the opinion evidence consistent with the regulations when he determined Plaintiff's residual functional capacity. R&R at 18. And assessing Plaintiff's residual functional capacity, the ALJ considered that Plaintiff's activities of daily living were not "limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. at 18. The Magistrate Judge thus found that Plaintiff's first claim lacks merit. R&R at 18.

The Magistrate Judge also found without merit Plaintiff's second claim of error, namely that the ALJ erred in finding the medical opinions of Dr. Sreerama and Dr. Grant were "unpersuasive." R&R at 18–24. Among other things, the Magistrate Judge noted Plaintiff's reliance on cases that interpreted the prior regulatory authority, 20 C.F.R. §§ 404.1527, 416.927.[2] *See, e.g.*, *id.* at 18, n. 1; *see also id.* at 22. The Magistrate Judge found Plaintiff has not demonstrated that the ALJ failed to conduct a proper evaluation of Plaintiff's fibromyalgia or that the ALJ erred in evaluating the opinions of Dr. Sreerama. R&R at 23. Additionally, the Magistrate Judge found Plaintiff has not shown the ALJ erred in evaluating the opinions of Dr. Grant or that the ALJ's decision fails to comport with proper legal standards. *Id.* at 24. The Magistrate Judge concluded substantial evidence supports the ALJ's residual functional capacity assessment that Plaintiff retained the residual functional capacity to perform light work (lift, carry, push, and/or

---

[2] For claims filed on or after March 27, 2017, the Agency revised its regulations such that "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." *Webster v. Kijakazi*, 19 F.4th 715, 718-19 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520c).

pull twenty pounds occasionally and ten pounds frequently and sit, stand and/or walk for six hours in an eight-hour workday) with mental, postural, and environmental limitations, including being off task five percent of the time in addition to normal breaks. *See id.* at 20, 23.

### III.     Plaintiff's Objection

Plaintiff objects to the Magistrate Judge's recommendation, asserting primarily that the ALJ erred by failing to properly evaluate the functional effect of Plaintiff's fibromyalgia in accordance with the criteria set forth in SSR 12-2p. Docket No. 15 at 1. Plaintiff contends the ALJ and Magistrate Judge highlighted a few generally benign physical examinations but failed to consider the longitudinal record evidence. *Id.* at 3. Plaintiff argues the ALJ improperly relied on an absence of objective clinical findings, which "is problematic because [a] diagnosis of fibromyalgia often lacks objective clinical findings." *Id.* at 3–4 (quoting *Wyche v. Saul*, No. 3:19-CV-00396, 2020 WL 5912600, at *3 (S.D. Tex. Oct. 6, 2020) (internal citations omitted)). Plaintiff further contends that the Commissioner and Magistrate Judge improperly relied on "*post hoc* rationalizations*"* to justify the ALJ's finding that Plaintiff's treating physician was not persuasive. *Id.* at 5–6.

Plaintiff asserts the record reflects that at varying times Plaintiff had tenderness at trigger points, including tenderness of the hands, wrists, elbows, shoulders, feet, ankles, hips, and spine, as well as occasional tenderness and limited range of motion in the lumbar spine, elbows, knees, and wrists, and edema in the leg and ankle. *Id*. at 8 (citing Tr. at 19). According to Plaintiff, the record shows, consistent with the nature of fibromyalgia, symptoms and signs consistent with fibromyalgia that "var[ied] in severity over time and may [have] even been absent on some days." *Id.* (citing SSR 12-2p, 2012 WL 3104869, at *5). Plaintiff contends the ALJ and the Magistrate Judge failed to appreciate the manner in which fibromyalgia may impact a person's ability to

engage in substantial gainful activity. *Id*. at 9. Plaintiff requests the Commissioner's decision be reversed and that this matter be remanded to the Commissioner for payment of benefits or a *de novo* hearing and a new decision. *Id.*

## LEGAL STANDARD

A district court conducts a *de novo* review of any portion of a magistrate judge's report and recommendation to which any party files an objection. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000). After conducting a *de novo* review, the district court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

## DISCUSSION—*DE NOVO* REVIEW

The overarching issues on appeal are whether substantial evidence of record supports the Commissioner's decision that Plaintiff was not disabled during the relevant period, and whether the ALJ applied the correct legal standards in reaching that decision. The Magistrate Judge determined the record shows that substantial evidence supports the Commissioner's decision that Plaintiff is not disabled and the ALJ correctly applied the applicable legal standards. Plaintiff has filed objections to the Magistrate Judge's Report and Recommendation.

In her objections, Plaintiff references the criteria set forth in SSR 12-2p and argues the ALJ erred in his assessment of Plaintiff's residual functional capacity as it pertains to the functional impact of Plaintiff's fibromyalgia, focusing on the limited weight afforded to Dr. Sreerama's November 2020 medical opinion on the effects of fibromyalgia. Docket No. 15 at 3.

SSR 12-2p establishes what is required for an ALJ to determine that a claimant has a medically determinable impairment of fibromyalgia. *See Patrick v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-333-TSL-MTP, 2022 WL 2813751, at *3 (S.D. Miss. June 30, 2022), *report and*

*recommendation adopted*, No. 3:20-CV-333-TSL-MTP, 2022 WL 2813047 (S.D. Miss. July 18, 2022). The record must contain a physician's diagnosis of fibromyalgia and evidence to satisfy one of two tests, one based upon the 1990 American Colleges of Rheumatology Criteria for the Classification of Fibromyalgia and the other based upon the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. *Id.* The 1990 test requires (1) a history of widespread pain; (2) at least eleven positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Id*. The 2010 test is the same as the 1990 test, except for the second element. Instead of eleven positive tender points, the claimant must show repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, such as fatigue, cognitive problems, depression, anxiety, or irritable bowel syndrome. *Id.* SSR 12-2p also discusses the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) that provides how an ALJ determines whether a claimant with a medically determinable impairment of fibromyalgia is disabled. *See* SSR 12-2p, 2012 WL 3104869, at *5.

In his December 29, 2020 decision, the ALJ found at step two that Plaintiff has severe impairments of obesity, degenerative disc disease, neuropathy, degenerative joint disease of the right shoulder, fibromyalgia, major depressive disorder, bilateral carpal tunnel syndrome and chronic pain syndrome. Tr. at 12–13. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. at 13–16. Referencing SSR12-2p, the ALJ stated as follows:

> Fibromyalgia is a severe impairment when an individual demonstrates the following: a history of widespread pain that has persisted (or that persisted) for at least 3 months; at least 11 positive tender points on physical examination; and evidence that other disorders that could cause the symptoms or signs were excluded

(SSR 12-2p). Alternatively, fibromyalgia is a severe impairment when an individual has a history of widespread pain accompanied by repeated manifestations of six qualifying fibromyalgia symptoms not exclusively caused by other impairments (SSR 12-2p). The claimant has the following qualifying fibromyalgia symptoms: muscle pain, fatigue or tiredness, thinking or remembering problems, shortness of breath, insomnia, and depression (B4F/12, 20-21). Further, the evidence documents tender points on examinations (B2F/4, 8; B4F/12-13, 17, 21).

The severity of the claimant's fibromyalgia, alone or in combination with another medically determinable impairment, does not equal a listing. Since fibromyalgia does not fall within the criteria of a listed impairment, a finding must be made regarding whether it equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment. Here, there was no medical expert testimony regarding the claimant's fibromyalgia; therefore it does not medically equal a listing.

Tr. at 14.[3]

In order to make a determination at step four regarding Plaintiff's ability to perform past relevant work, the ALJ assessed Plaintiff's residual functional capacity or RFC (the most Plaintiff can still do despite her limitations). The ALJ examined the record, including the evidence regarding Plaintiff's fibromyalgia, and determined Plaintiff has the residual functional capacity to perform light work with some limitations. Tr. at 16.

The RFC is not a medical finding; it is an administrative finding, and the sole responsibility of the ALJ to determine. *Seago v. Kijakazi*, No. 1:21-CV-136, 2022 WL 17853369, at *4 (S.D. Tex. Nov. 15, 2022), *report and recommendation adopted*, No. 1:21-CV-00136, 2022 WL

---

[3] Pursuant to SSR 12-2p:
> [Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment. At step 3, therefore, we determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

*Roberts v. Comm'r of Soc. Sec.*, No. 2:17-CV-129-KS-MTP, 2018 WL 8513528, at *4 (S.D. Miss. Nov. 5, 2018).

17852795 (S.D. Tex. Dec. 22, 2022) (citing *Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012)). This determination is based on the ALJ weighing the evidence, resolving conflicts in the evidence, and creating an RFC consistent with the entirety of the record. *Id*. (citation omitted). In the residual functional capacity context, SSR 12-2p provides as follows regarding fibromyalgia:

> We base our RFC assessment on all relevant evidence in the case record. We consider the effects of all of the person's medically determinable impairments, including impairments that are "not severe." For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have "bad days and good days."

*Roberts v. Comm'r of Soc. Sec*., No. 2:17-CV-129-KS-MTP, 2018 WL 8513528, at *6 (S.D. Miss. Nov. 5, 2018) (quoting SSR 12-2p); *see also* 2012 WL 3104869, at *6.

In her objections, Plaintiff argues the ALJ relied upon inappropriate criteria in assessing Plaintiff's fibromyalgia and did not consider the longitudinal record in evaluating the effect of Plaintiff's fibromyalgia as specified in SSR 12-2p. Docket No. 15 at 1. According to Plaintiff, despite acknowledging the "wealth of longitudinal evidence" demonstrating Plaintiff had the qualifying fibromyalgia symptoms of muscle pain, fatigue or tiredness, thinking or remembering problems, shortness of breath, insomnia, and depression, the ALJ later rejected the reported limitations from Plaintiff's fibromyalgia and improperly discredited Dr. Sreerama's November 2020 medical opinion when assessing Plaintiff's residual functional capacity. *Id.* at 2–3.

The Commissioner asserts on appeal that the ALJ properly discounted Dr. Sreerama's November 2020 opinion, which the Commissioner characterizes as a "five-page checklist/short answer form with no supporting documentation." Docket No. 12 at 8. Plaintiff argues in her objections that the ALJ did not specifically rely on such reasoning in discrediting Dr. Sreerama's opinion. Docket No. 15 at 5–6. Thus, according to Plaintiff, such alleged "*post hoc* rationalizations" cannot retroactively justify the ALJ's decision. *Id.* But the analysis here need not

label the Commissioner's characterizations of Dr. Sreerama's November 2020 opinion, which were a minor detail on which the R&R does not rely. Rather, the analysis here focuses on whether the ALJ's findings used to justify the ALJ's decision, including the finding that Dr. Sreerama's November 2020 opinion is unpersuasive, were supported by substantial evidence. *See Zellweger v. Saul*, 984 F.3d 1251, 1252, 1254 (7th Cir. 2021) (explaining that even when a party presents *post hoc* rationale, nothing "prohibits a reviewing court from reading an ALJ's decision holistically" and considering the ALJ's actual rationale for the ALJ's decision).

Plaintiff also argues in her objections that the ALJ did not consider Plaintiff's limited lifestyle. But the ALJ did consider Plaintiff's limited lifestyle. According to the ALJ, he specifically limited Plaintiff to work at the light exertional level (with some limitations) to account for, among other things, Plaintiff's fibromyalgia.[4] Tr. at 20. For example, to account for Plaintiff's pain and symptoms of depression, the ALJ's residual functional capacity assessment limited Plaintiff, in addition to normal breaks, to be off task 5% of the time in an eight-hour workday. *Id.* at 16, 20.

Although the ALJ may have focused on generally benign physical examination findings, he also considered other examination findings which revealed qualifying fibromyalgia symptoms. *See* Tr. at 14. For example, the ALJ additionally considered that Plaintiff reported she does some housework, is functional around her home, can clean her room, and rides a recumbent bike for exercise. *See, e.g.*, Tr. at 18, 922–23, 1045, 1049. The ALJ also considered the opinions of non-treating medical consultants who opined Plaintiff is limited to work at the light level, with

---

[4] The ALJ mentioned SSR 12-2p at step three. Tr. at 14. Although he did not mention SSR 12-2p again, the record demonstrates the ALJ complied with the requirements of the rule when assessing Plaintiff's residual functional capacity. Tr. at 16–21; *see Roberts v. Comm'r of Soc. Sec.*, 2018 WL 8513528, at *6.

occasional postural limitations as well as limited pushing, pulling, handling, and fingering. Tr. at 20–21. The ALJ's opinion demonstrates the ALJ appropriately evaluated the record, including the longitudinal record of Plaintiff's fibromyalgia. Accordingly, Plaintiff's argument that the ALJ considered only a "lack of objective clinical findings" (*see* Docket No. 15 at 3–4) is unpersuasive.

Plaintiff also argues the ALJ erred in his assessment of her treating physician's opinion on the effect of fibromyalgia, and the residual functional capacity assessment is not supported by substantial evidence. *See* Docket. No. 15 at 7–9. Because Plaintiff filed for benefits "on or after March 27, 2017," the ALJ was required to apply the new regulations. 20 C.F.R. §§ 404.1520c, 416.920c. Through the new regulations, the Commissioner revised the standards and procedures for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule.[5] As such, "ALJs are no longer required to give controlling weight to the opinions of treating physicians." *Ramirez v. Kijakazi*, No. 4:21-CV-03780, 2023 WL 1456786, at *2 (S.D. Tex. Feb. 1, 2023), *report and recommendation adopted*, No. 4:21-CV-03780, 2023 WL 2145541 (S.D. Tex. Feb. 21, 2023) (quoting *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (quotation omitted in *Ramirez*)).

"Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources." *Pearson*, 2021 WL 3708047, at *4 (citing 20 C.F.R. § 404.1520c(b)(2)). "In evaluating persuasiveness, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) 'other factors that tend to support

---

[5] Plaintiff also argues the cases it cited under the prior treating physician regulation should be given more weight because the R&R, as Plaintiff alleges, relies on such cases to support its conclusions. Docket No. 15 at 4–5. But Plaintiff's argument fails because, unlike Plaintiff, the R&R (1) does not rely on any such cases' interpretation of the prior treating physician regulation to reach its conclusion; and (2) does not cite any of those such cases for a proposition contrary to the current treating physician regulation.

or contradict' the opinion." *Id.* (citing § 404.1520c(c)). "The most important factors in evaluating persuasiveness are supportability and consistency." *Id.* (citing § 404.1520c(b)(2)).

At a minimum, an ALJ's persuasiveness explanation should enable "the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Ramirez*, 2023 WL 1456786, at *3 (citing *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021)). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Id*. (citing *Pearson*, 2021 WL 3708047, at *5).

In a medical source statement dated November 17, 2020, Dr. Sreerama reported Plaintiff's diagnoses as inflammatory polyarthropathy, back pain, and carpal tunnel syndrome and listed objective evidence supporting the diagnoses as elevated ESR and tenderness over joints. Tr. at 1061. Dr. Sreerama opined Plaintiff could not consistently perform work requiring her to be on her feet longer than two hours during an eight-hour workday; could not lift ten pounds frequently and twenty pounds occasionally; would need additional breaks during an eight-hour workday totaling one hour; could occasionally reach, handle, and finger; could frequently feel; would miss work more than ten days per month on average; and would be off task more than 25% of an eight-hour workday. *Id.* at 1061–65.

In evaluating the opinion of Dr. Sreerama, the ALJ explained as follows:

The claimant's physician, Ravis Kumar Sreerama, M.D., opined that the claimant's inflammatory polyarthropathy, back pain, and carpal tunnel syndrome made it impossible for her to consistently perform work requiring her to be on her feet for longer than two hours per day (B17F/2). He opined that she could lift ten pounds frequently and 20 pounds occasionally (B17F/2). He opined she would need to take rest breaks to alleviate her pain symptoms for an additional hour per day (B17F/3). He opined that she could occasionally reach, handle, and finger bilaterally, and frequently feel (B17F/3-4). He opined that she would miss ten or more days per

> month due to her conditions and would be off task more than 25% of the workday (B17F/4). Dr. Sreerama also signed the claimant's application for a disability placard, affirming that the claimant had a permanent disability (B10F/2-3). Dr. Sreerama's opinion is unpersuasive because it is inconsistent with the evidence of record. His opinion that the claimant would be off task 25% of the time, need additional one hour breaks per day, and would miss 10 days per month is inconsistent with the claimant's generally abnormal findings on her physical examinations. Specifically, it is inconsistent with the evidence showing that the claimant had normal gait and reflexes, but had some tenderness and limited range of motion in the joints and spine. . . . Dr. Sreerama's extreme limitations are also unsupported by his examinations of the claimant which showed only tenderness in the spine and hands and some limited range of motion in the spine. . . .

*Id.* at 21. The ALJ found unpersuasive the opinions of Dr. Sreerama that Plaintiff would need an additional hour of rest each day, would miss ten or more days per month, and would be off task for more than twenty-five percent of the workday due to these diagnoses *Id.* The ALJ explained the extreme limitations are not persuasive because they are inconsistent with evidence in the record and with Dr. Sreerama's own examinations of Plaintiff showing only tenderness of the spine and some limited range of motion of the spine, which included an examination conducted on November 9, 2020, a little over one week before the medical source statement (Tr. 21, 1061-71, 1076, 1082-83, 1087-88).

Plaintiff has not demonstrated that the ALJ erred in evaluating the opinion of Dr. Sreerama. The ALJ provided specific and legitimate reasons for finding Dr. Sreerama's conclusions to be unpersuasive. Evidence from multiple sources, including the state agency consultants, Plaintiff's function reports, and other medical records, conflicts with Dr. Sreerama's opinion as to the degree to which Plaintiff's physical limitations prevented her from performing tasks in the workplace.

As noted above, the opinions of the state agency consultants were considered by the ALJ along with the remainder of the medical record. As for the remainder of the medical record, the ALJ identified physical examination findings that support the light residual functional capacity assessment. Tr. at 19. For example, the ALJ noted physical examinations throughout the record

"generally showed benign findings including normal tone and motor strength." Tr. at 19, 384, 388, 1049. The ALJ also considered that even though Plaintiff had tenderness at trigger points, including tenderness on hands, wrists, elbows, shoulders, feet, ankles, hips, and spine, her "providers routinely noted she had normal gait and station, ambulated normally with no need for an assistive device, and had normal sensation and reflexes." Tr. 19, 384, 388, 809, 1015–16, 1036–37, 1039, 1049). This evidence contradicts Plaintiff's claim that her fibromyalgia is disabling.

The Court finds, consistent with the Magistrate Judge, substantial evidence supports the ALJ's residual functional capacity assessment. After reviewing Plaintiff's objection, the transcript, the briefs of the parties, and the Report and Recommendation, the Court finds Plaintiff's objection is without merit.

## CONCLUSION

The Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. Accordingly, it is

**ORDERED** that the Report and Recommendation of the Magistrate Judge (Docket No. 14) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-entitled Social Security action is **AFFIRMED**. A final judgment will be entered in this case in accordance with this Order.

**So ORDERED and SIGNED this 27th day of March, 2023.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE